

HMC/BF: USAO#2017R00428

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA _____ DEPUTY CRIMINAL NO. DKC-18-0370

:

v.                                              :          (Conspiracy to Defraud the United
                                                :          States, 18 U.S.C. § 371; Visa Fraud,
ASHER SHARVIT,                                  :          18 U.S.C. § 1546(a); Inducing Illegal
OREN SHARVIT, and                              :          Entry, 8 U.S.C. §1324(a)(1)(A)(iv);
RONA ZHFANI,                                    :          Unlawful Employment of Aliens,
     a/k/a "RONA SHARVIT,"                      :          8 U.S.C. §1324(a)(3); Harboring Aliens
                                                :          for Commercial Advantage, 8 U.S.C.
Defendants.                                     :          §1324(a)(1)(iii); Aiding & Abetting, 18
                                                :          U.S.C. § 2; Forfeiture Notice, 18 U.S.C.
                                                :          § 981(a)(1)(C); 21 U.S.C. § 853; 28
                                                :          U.S.C. § 2461(c))
                                                :

...oOo...

## INDICTMENT

### COUNT ONE
(Conspiracy to Defraud the United States)

The Grand Jury for the District of Maryland charges:

### INTRODUCTION

At times material to this Indictment:

1.    Defendants **ASHER SHARVIT ("SHARVIT"), OREN SHARVIT ("O. SHARVIT"),** and **RONA ZHFANI ("ZHFANI")** were individuals associated with multiple businesses, including Unlimited Treasures, Inc., Unlimited 13 Corp., Deja Vu Cosmetics, and BH Distribution Group (collectively "Unlimited" or the "Defendants' Companies").

2.    **SHARVIT** and **O. SHARVIT** were citizens of the United States, Israel, and France.  **ZHFANI** is an Israeli citizen.

1

3.     Unlimited operated kiosks and stores in malls in Maryland, Delaware, Virginia, and New York.

4.     Deja Vu was a company based in Israel and Pennsylvania. Deja Vu cosmetics ("Deja Vu") sold wholesale cosmetics with an emphasis on products originating from the Dead Sea region of Israel. Unlimited purchased product for resale from Deja Vu.

5.     The Defendants' Companies often used the trade names Deja Vu and BioXage when opening stores and selling products.

6.     From in or about 2015 to the present, **SHARVIT** was a part owner of Filicori Zecchini, which was a coffee shop business with multiple stores located in Maryland and New York.

7.     From in or about 2010 until in or about 2017, Unlimited controlled multiple bank accounts in the United States, including the following:

(a)     an account at PNC Bank ending in 3405 ("PNC 3405"), on which **SHARVIT** and others had signature authority;

(b)     an account at PNC Bank ending in 3598 ("PNC 3598"), on which three employees of Unlimited had authority;

8.     "WhatsApp" was a mobile and computer application that allowed users to send encrypted messages, documents, and videos.

The B-2 Visa Program Allowed Foreigners to Visit but Not Work in the United States

9.     United States Citizenship and Immigration Services ("USCIS"), a component of the U.S. Department of Homeland Security ("DHS"), was the government agency that oversaw lawful immigration to the United States.

10.     The U.S. Department of State ("State Department") was the government agency

2

responsible for issuing both nonimmigrant and immigrant visas at embassies and consulates outside the United States.

11.    A citizen of most foreign countries who wished to enter the United States had to obtain a visa, which could be a non-immigrant visa for temporary stay, or an immigrant visa if the foreign citizen was seeking to establish permanent residence.

12.    The United States issued B-2 visas, which were nonimmigrant visas that allowed foreign citizens to temporarily enter and remain in the United States for tourism, pleasure, or visiting purposes for up to six months.

13.    A foreign citizen who entered the United States on a B-2 visa could extend the period in the United States for an additional six months by filing an extension request with the government.

14.    Applicants for visa extensions had to provide truthful information to USCIS, and were required to sign and submit a government form under penalty of perjury.

15.    A foreign citizen who entered the United States on a B-2 visa could not legally work in the United States unless he/she obtained employment authorization from USCIS.

## THE CONSPIRACY

16.    From in or about 2012, and continuing at least until in or about 2017, in the District of Maryland and elsewhere, the defendants,

**ASHER SHARVIT,
OREN SHARVIT, and
RONA ZHFANI,**

did knowingly and willfully combine, conspire, confederate and agree with persons known and unknown to the Grand Jury, to defraud the United States by impeding, impairing, and obstructing the lawful government functions of DHS, USCIS, and the State Department to administer,

regulate, and enforce laws and regulations concerning (i) the hiring of aliens, (ii) the issuance of nonimmigrant visas, and (iii) the entry of, presence of, and work restrictions on aliens in the United States, for which they are respectively responsible; and to commit certain offenses against the United States, that is:

        (a)     to knowingly make materially false statements in visa applications, visa extensions, and documents required by the immigration laws, in violation of 18 U.S.C. § 1546;

        (b)     to encourage and induce aliens to enter and reside in the United States for purposes of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that such entry and residence in the United States would be in violation of law, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv);

        (c)     to knowingly hire for employment at least 10 individuals during the 12-month period beginning on or about June 1, 2015, knowing that said individuals were aliens (as defined in 8 U.S.C. § 1324(a)(3)(B)) with respect to such employment; and

        (d)     to conceal, harbor, and shield aliens from detection, and attempt to conceal, harbor and shield aliens from detection, for the purposes of commercial advantage and private financial gain, in violation of 8 U.S.C. §1324(a)(1)(A)(iii).

**OBJECT OF THE CONSPIRACY**

17.     It was the object of the conspiracy that the defendants,

**ASHER SHARVIT,**
**OREN SHARVIT, and**
**RONA ZHFANI,**

recruited, employed and paid aliens to work at the Defendants' Companies, and caused foreign employees to enter the United States on false pretenses and remain here without disclosing their work for the Defendants' Companies, so the defendants could maximize the revenues and profits

of the Defendant's Companies and avoid hiring more expensive employees who could lawfully work in the United States.

## METHODS AND MEANS

18.     It was part of the conspiracy that **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators recruited aliens, including individuals in Israel and France, to travel to the United States to work for the Defendants' Companies.

19.     It was further part of the conspiracy that **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators agreed to reimburse certain aliens for their travel expenses to the United States, and pay the travel expenses of other aliens travelling to the United States to work for the Defendants' Companies.

20.     It was further part of the conspiracy that **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators caused aliens to make false and fraudulent representations to obtain visitor visas, visa extensions, and other official documents issued by the United States.

21.     It was further part of the conspiracy that **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators caused CO-CONSPIRATOR #1 to be listed as the owner of Unlimited 13 Corp. in an effort to insulate the defendants from investigation, scrutiny, and detection.

22.     It was further part of the conspiracy that **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators used electronic messaging programs, including "WhatsApp," to send messages about the operation of the Defendants' Companies, including information about prospective and current employees, sales, salaries, housing, transportation, and scheduling.

23.     It was further part of the conspiracy that **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators hired more than ten aliens to work at Unlimited and the other businesses the defendants operated.

24.     It was further part of the conspiracy that **SHARVIT, O. SHARVIT,** and **ZHFANI** increased their profits by causing the aliens to:

a.     Get paid strictly on a commission basis for sales;

b.     Receive their salaries in cash, without any appropriate deductions for state and federal taxes, social security, Medicare, and other required employee deductions;

c.     Agree to salary deductions to pay for residential housing leased by the Defendants' Companies in Baltimore City; and

d.     Use vehicles provided by the Defendants' Companies to travel to work.

25.     It was further part of the conspiracy that **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators trained aliens on how to successfully sell cosmetics and other products to individuals at shopping malls in Maryland, Delaware, and Virginia.

26.     It was further part of the conspiracy that **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators held bi-weekly meetings at which the success of Unlimited employees' was publically touted.

27.     It was further part of the conspiracy that **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators reduced the salary of foreign employees to cover the cost of filing fraudulent visa extensions.

28.     It was further part of the conspiracy that **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators used BH Distribution Group to obtain money from the conspiracy.

29.     It was further part of the conspiracy that the Defendants' Companies, **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators obtained more than $5 million in revenue by using aliens who lacked the ability to legally work in the United States to sell cosmetics and other products.

6

## OVERT ACTS

30.     In furtherance of the conspiracy, and to effect the objects thereof, at least one of

the co-conspirators committed or caused to be committed at least one of the following acts,

among others, in the District of Maryland, and elsewhere:

a.      On or about September 23, 2013, a conspirator posted a message on

Facebook that Unlimited was recruiting personnel. The message included Unlimited's logo and

contact information.

b.   .   It was further part of the conspiracy that in or about February 2015,

**SHARVIT** established a Pennsylvania corporation called BH Distribution Group LLC.

c.      On or about April 19, 2015, **SHARVIT** sent an email discussing various

aspects of the conspiracy, and stating:

    i.      "I was thinking yesterday of where we are standing and where we
            need to go...Also I wrote a plan that will direct us for the near
            future;"

    ii.     "Bring new employees by opening an efficient manpower office in
            Israel"

    iii.    "Goals: bring as many employees as we can from Israel for our
            retail companies but also in the near future by selling them to other
            retail companies that will sell our products;"

    iv.     "keep working with creation and maybe start to work with another
            man power Israeli company."

 .   d.      On or about May 12, 2015, **O. SHARVIT** wrote in a WhatsApp message,

seeking to confirm "that the company in Israel don't [sic] tell to the new employees that they

finish their day at 8:00 pm" and to "bring me me [sic] maximum of employees bcse [sic] we are

going to conquest America!!!!"

e.      On or about June 1, 2015, CO-CONSPIRATOR #2 sent a WhatsApp

message that contained an employment contract, which stated that the defendants' employees

7

would be: (i) required to work 5 ½ days per week; (ii) paid every two weeks based solely on their sales (a commission of 25-30%); (iii) provided with local travel arrangements upon their arrival at an airport in the United States; (iv) offered a 50% reimbursement of their airplane travel costs if they worked for Unlimited for three months and a complete reimbursement if they worked for six months; (v) offered advanced sales training at Unlimited's office; (vi) provided with shared housing that included the first month free, and a weekly rent of $135 thereafter; and (vii) offered access to vehicles for getting to work and/or use during their days off.

      f.      On or about June 12, 2015, **ZHFANI** sent a WhatsApp message containing a list of approximately eight apartments and the first names of more than ten foreign employees assigned to the apartments.

      g.      In or about 2015 and 2016, **SHARVIT, O. SHARVIT, ZHFANI,** and their co-conspirators held regular meetings in which they touted the success of Unlimited and its employees in public, and the foreign employees received their salaries in cash filled envelopes.

      h.      On or about September 21, 2016, CO-CONSPIRATOR #2 sent WhatsApp messages with a photograph of the boarding pass of an alien with the initials O.P., stating that she had arranged for O.P to be picked up in Baltimore. O.P entered the United States the next day on a visa that did not allow employment and then sold products for the Defendants' Companies.

      i.      On or about September 21, 2015, **ZHFANI** sent a WhatsApp message with a video taken at a recent bi-weekly meeting of Unlimited employees.

      j.      On or about September 17, 2015, **SHARVIT** sent a WhatsApp message about an alien with the initials S.Y., who entered the United States the next day on a visa that did not allow employment and then worked for the Defendants' Companies.

k.      In or about January 2013, September 2013, and December 2014,

SHARVIT signed leases for apartments in Baltimore City, where foreign employees of the

Defendants' Companies later stayed while working for the Defendants' Companies.

l.      On or about November 21, 2015, ZHFANI sent a WhatsApp message to

SHARVIT and O. SHARVIT, and other co-conspirators, which contained a list of

approximately twelve apartments and approximately forty-two first names.

m.      On or about November 23, 2015, ZHFANI sent a WhatsApp message,

fining an Unlimited employee $50 for not attending an Unlimited employee meeting.

n.      On or about November 25, 2015, ZHFANI sent a WhatsApp message

containing 2014 and 2015 group photos of Unlimited employees, including many aliens who

lacked the ability to legally work in the United States.

o.      On or about December 22, 2015, SHARVIT sent a WhatsApp message

about the termination of an employee with the initials M.S., who was in the Unites States on a

visa that did not allow employment and had been working for Unlimited.

p.      On or about December 29, 2015, O. SHARVIT sent a WhatsApp message

about the termination of Unlimited employee E.S., who was in the United States on a visa that

did not allow employment and had been working for Unlimited.

q.      On or about December 30, 2015, SHARVIT sent a WhatsApp message

discussing the employees, store locations, and the status of Unlimited.

r.      On or about January 20, 2016, CO-CONSPIRATOR #2 received an email

from a company that contained a 12-page recruiting brochure for Unlimited, which was written

in Hebrew, and which advised prospective employees of the following:  (i) employees are

supposed to work 5 ½ days per week; (ii) employees will be paid 25-30% commissions; (iii)

employees will be paid in cash every two weeks; (iv) employees will be provided transportation and lodging for $500 per month; and (v) employees will receive assistance with their visas.

s.     On or about January 4, 2016, **SHARVIT** sent a WhatsApp message about an Unlimited employee with the initials L.C., who was present in the United States on a visa that did not allow employment, but had been working for Unlimited.

t.     On or about January 4, 2016, **O. SHARVIT** sent a WhatsApp message about the visa status of an Unlimited employee with the initials M.G., who was present in the United States on a visa that did not allow employment, but had been working for Unlimited.

u.     On or about January 17, 2016, **SHARVIT** instructed CO-CONSPIRATOR #3 to provide instructions to aliens working for the Defendants' Companies on how to file extensions for visas, which did not allow employment.

v.     On or about March 8, 2016, **ZHFANI** sent a WhatsApp message in which she stated that **O. SHARVIT** should hire particular aliens, who were present in the United States and could now work for Unlimited because their prior employer decided to make all their employees legal.

w.     On or about March 20, 2016, **ZHFANI** sent a WhatsApp message listing the employees and store locations of Unlimited as well as the vehicles to be used by Unlimited employees in furtherance of their duties.

x.     On or about April 11, 2016, **ZHFANI** sent a WhatsApp message about an Unlimited employee and how he will start working on a visa extension. The employee was present in the United States on a visitor visa.

y.     On or about September 22, 2016, **A. SHARVIT** sent a WhatsApp group message to the defendants and co-conspirators, including **O. SHARVIT** and **ZHFANI,** directing

10

co-conspirator #3 to make sure visa extensions were done at least a week before they were due and to make sure they were completed.

z.      On or about September 26, 2016 and October 5, 2016, **ZHFANI** sent messages to Unlimited owners and managers, assigning Unlimited employees to various work locations.

aa.     On or about October 18, 2016, **ZHFANI** sent a WhatsApp message about three aliens (S.L., E.E., and Y.G.), who entered the United States the next day on visas that did not allow employment.  Shortly thereafter, **ZHFANI** sent a message about the room assignments for S.L. and E.E., one of whom was a minor at the time.

bb.     On multiple dates in 2016, members of the conspiracy transferred money from accounts registered to Unlimited to BH Distribution Group, before eventually distributing money from BH Distribution Group to **SHARVIT, O. SHARVIT**, and other conspirators as shareholder distributions.

cc.     On or about December 5, 2016, **SHARVIT** sent a message to CO-CONSPIRATOR #3, instructing him to transfer $45,000 to BH Distribution Group.

dd.     On or about December 5, 2016, CO-CONSPIRATOR #3 used money from Unlimited 13 Corp. to obtain a $45,000 check payable to BH Distribution Group.

ee.     On or about December 26, 2016, **O. SHARVIT** sent a WhatsApp message to **SHARVIT, ZHFANI,** and their co-conspirators, stating in part "[nickname of A.B.] burned in two weeks. Working til 1/1/17. visa extension refused, [CO-CONSPIRATOR #3] will check again the papers with him tomorrow night. He already talked with Rona about it. I continue siha with him tomorrow. (Possible to convince him to stay and find somebody to marry)."

ff.     On or about December 28, 2016, **O. SHARVIT** sent a WhatsApp message

about the departure of an alien, who was in the United States and had been working for

Unlimited, but was leaving because he "doesn't want to be burned."

18 U.S.C. § 371

## COUNT TWO
### (Visa Fraud)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 15 of Count One of this Indictment are hereby incorporated by reference as though fully set forth herein.

2.      On or about January 4, 2016, in the District of Maryland, the defendants,

**ASHER SHARVIT,
OREN SHARVIT, and
RONA ZHFANI,**

did knowingly aid and abet the use, possession, and receipt, and attempted use, possession, and receipt of a nonimmigrant visa extension and other documents prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, that is, a Form I-539, Application to Extend/Change Nonimmigrant Status, in the name of an individual with the initials M.G., which the defendants knew to be procured by means of false claims and statements, namely that the alien was remaining in the United States for tourist purposes when the defendants then and there knew the alien was remaining in the United States for employment.

18 U.S.C. § 1546
18 U.S.C. § 2

## COUNT THREE
### (Encouraging and Inducing Illegal Entry)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 15 of Count One of this Indictment are hereby incorporated

by reference as though fully set forth herein.

2. On or about September 17, 2015, in the District of Maryland, the defendants,

**ASHER SHARVIT,**
**OREN SHARVIT, and**
**RONA ZHFANI,**

did encourage and induce at least one alien to enter and reside in the United States for purposes

of commercial advantage and private financial gain, knowing and in reckless disregard that

coming into, entry, and residence in the United State would be in violation of law.


8 U.S.C. § 1324(a)(1)(A)(iv)
18 U.S.C. § 2

14

## COUNT FOUR
### (Unlawful Employment of Aliens)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 15 of Count One of this Indictment are hereby incorporated by reference as though fully set forth herein.

2. From on or about June 1, 2015 until on or about June 1, 2016, in the District of Maryland, the defendants,

**ASHER SHARVIT,**
**OREN SHARVIT, and**
**RONA ZHFANI,**

did knowingly hire for employment at least ten individuals, knowing that said individuals are unauthorized aliens (as defined in 8 U.S.C. § 1324(a)(3)) with respect to such employment.

8 U.S.C. § 1324(a)(3)
18 U.S.C. § 2

## COUNTS FIVE TO SEVEN
### (Harboring Illegal Aliens)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 10 of Count One of this Indictment are hereby incorporated by reference as though fully set forth herein.

2.     On or about the dates set forth below, in the District of Maryland, the defendants,

**ASHER SHARVIT,**
**OREN SHARVIT, and**
**RONA ZHFANI,**

did knowingly and in reckless disregard of the fact that an alien with the initials listed below, had come to, entered and remained in the United States in violation of law, did conceal, harbor, and shield from detection, and attempt to conceal, harbor, and shield from detection such alien for the purpose of commercial advantage and private financial gain; to wit:  by providing the alien with (a) transportation to Maryland; (b) lodging and transportation in Maryland; (c) shelter in buildings and other places in Maryland, (d) salary payments in cash and not disclosing the employment to state or federal entities, and (e) advice on how to fraudulently apply for immigration and travel documents from USCIS and the State Department.

| Count | Date | Alien Initials |
|-------|------|----------------|
| Five | 2015 - 2016 | S.Y. |
| Six | Jan. 2016 - Mar. 2016 | T.B. |
| Seven | Nov. 2015 – May 2016 | Y.E. |

18 U.S.C. § 1324(a)(1)(A)(iii)
18 U.S.C. § 2

## FORFEITURE

1.    Upon conviction of the offenses set forth in Counts One through Seven of this Indictment, the defendants,

**ASHER SHARVIT,
OREN SHARVIT, and
RONA ZHFANI,**

shall forfeit to the United States, all property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including but not limited to a sum of money equal to the value of the proceeds of the offenses, which amount is at least **$5,000,000.**

2.    If, as a result of any act or omission of the defendant, any such property subject to forfeiture,

    (a)    cannot be located upon the exercise of diligence;

    (b)    has been transferred, or sold to, or deposited with a third person;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

18 U.S.C. § 981
21 U.S.C. § 853
28 U.S.C. § 2461
8 U.S.C. § 1324

_____
ROBERT K. HUR
UNITED STATES ATTORNEY

**SIGNATURE REDACTED**

_____
Foreperson

Date:   July _10_ 2018

17